# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 07-6045

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Bradley R. Thayer and Judith N. Thayer, | * | |
| | * | |
| Debtors - Defendants | * | |
| | * | |
| | * | Appeal from the United States |
| American Residential Mortgage, LP, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Plaintiff - Appellee. | * | |
| | * | |
| v. | * | |
| | * | |
| Bradley R. Thayer and Judith N. Thayer, | * | |
| | * | |
| Defendant - Appellants. | * | |
| | * | |

Submitted: February 13, 2008
Filed: March 31, 2008

Before SCHERMER, MAHONEY, and VENTERS, Bankruptcy Judges.

MAHONEY, Bankruptcy Judge.

## ORDERS APPEALED FROM

The debtors appeal four orders of the bankruptcy court. We affirm the two orders that determined that a mortgage on the debtors' property should be reinstated and remain in effect. We reverse the remaining two orders that imposed monetary sanctions on debtors' counsel for alleged violations of Rule 9011.

We have jurisdiction over this appeal from the final orders of the bankruptcy court. See 28 U.S.C. § 158(b).

## BACKGROUND

On September 11, 2002, the debtors executed a promissory note for the principal amount of $157,700 and a mortgage on their home in favor of American Residential Mortgage, the plaintiff here. American Residential then assigned its interests under the note and mortgage to TCF Mortgage Corp. On August 25, 2003, the debtor, Mr. Thayer, executed a new promissory note for $170,000 to American Residential, and both debtors executed a mortgage on their home in favor of American Residential, with the intention of refinancing and paying off the TCF note. The funds were transferred to a closing agent at that time. Three days later, on August 28, 2003, the debtors completed a Notice of Right to Cancel pursuant to the Truth in Lending Act ("TILA")[1] and timely sent the form to American Residential. American Residential received the form the next day. However, on that same day (Aug. 29, 2003), the closing agent – unaware of the cancellation – disbursed the funds to TCF and a credit-card company, as designated in the settlement statement. After deducting transactional costs, the closing agent sent Mr. Thayer a check for the balance ($4,093.46). The debtors returned that check to American Residential.

---

[1]15 U.S.C. § 1601 *et seq.*

In September 2003, the debtors made their regular monthly payment to TCF; the check was returned because, from the records of TCF, it appeared the TCF loan had been paid in full. TCF so advised the debtors in a letter accompanying the returned check. TCF executed a mortgage satisfaction document and mailed it to the closing agent in early October 2003. The satisfaction and release was not filed in the county land records at that time and had not been so filed at the time of the entry of the order appealed from.

American Residential contacted TCF to recover the payment. The money was not returned, but on February 18, 2004, TCF assigned its rights under the TCF note and mortgage to American Residential. On July 29, 2004 (post-petition), TCF again assigned its rights under the TCF note and mortgage to American Residential.

From August 29, 2003, through the end of 2004, American Residential paid all current obligations on real estate taxes and insurance on the property as they became due, for a total of $4,459.72. The debtors did not tender any payments on these obligations and have made no payments on the assigned TCF note to date.

On May 5, 2004, the debtors filed a Chapter 7 bankruptcy petition, and listed American Residential as an unsecured non-priority creditor. American Residential asserted the status of a secured creditor holding a perfected and enforceable mortgage, and filed the adversary proceeding underlying this appeal. The debtors argued that American Residential's mortgage had been released pre-petition and whatever *in personam* liability they may have had on the debt was dischargeable in bankruptcy. On cross-motions for partial summary judgment, the bankruptcy court found in favor of American Residential, ruling that it holds a valid, perfected, and enforceable mortgage against the debtors' residence based on the original 2002 document, and that the mortgage release executed by TCF was the result of a mistake and was therefore invalid. The bankruptcy court found that the debtors had successfully exercised their TILA rights, with the result of nullifying the refinancing transaction and returning the

3

debtors to the *status quo ante*, as debtors of TCF, which rights were assigned to American Residential. In a thorough and detailed opinion, the bankruptcy court explained that the debtors had in fact effectively rescinded the refinancing transaction, which rescission was honored by American Residential. The court noted that TCF and the closing agent were not aware of the rescission, so their part in completing the refinancing transaction was the result of a mistake. TCF documented the mortgage satisfaction without knowledge of that loan rescission, so equity required the mistaken satisfaction and release to be cancelled and annulled.

American Residential's adversary complaint also contained a count relating to non-dischargeability of any debt incurred by the debtors in connection with the refinancing loan. This count was, however, ultimately withdrawn.

In connection with its motion for summary judgment, American Residential filed a motion for Rule 9011 sanctions against debtors' counsel, based on the legally and logically inconsistent positions taken by the debtors in opposition to American Residential's claims in the adversary proceeding. The bankruptcy court awarded sanctions to American Residential of $15,000, or approximately half of the fees and expenses incurred by American Residential to obtain summary judgment on Count I of the complaint, finding that debtors' counsel persisted in advancing a sham argument that promoted form over substance and attempted to abate all debt and all liens arising in connection with both loan transactions.

After entry of the bankruptcy court's final order on July 6, 2007, the debtors timely filed this appeal.

## STANDARD OF REVIEW

The parties agree that no facts are in dispute. The bankruptcy court's grant of summary judgment is reviewed de novo, <u>Ries v. Wintz Properties, Inc. (In re Wintz</u>

Cos.), 230 B.R. 848, 857 (B.A.P. 8th Cir. 1999) (citing Peter v. Wedl, 155 F.3d 992, 996 (8th Cir. 1998), Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997), and Wade v. Midwest Acceptance Corp. (In re Wade), 219 B.R. 815, 818 (B.A.P. 8th Cir. 1998)), while its imposition of sanctions is subject to the deferential "clear abuse of discretion" standard of review. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination). "[T]he established standard for imposing sanctions is an objective determination of whether a party's conduct was reasonable under the circumstances." Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 759 (8th Cir. 1997) (quoting In re Armwood, 175 B.R. 779, 788 (Bankr. N.D. Ga. 1994)). "We apply an abuse-of-discretion standard of review in all aspects of Rule 11 (and by analogy, Rule 9011) cases." Id. (quoting Grunewaldt v. Mut. Life Ins. Co. of New York (In re Coones Ranch, Inc.), 7 F.3d 740, 743 (8th Cir. 1993)). "An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." PW Enter., Inc. v. Kaler (In re Racing Servs., Inc.), 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005).

DISCUSSION

1. **The bankruptcy court properly reinstated the mortgage**

At the trial level and this appellate level, the debtors take the position that they properly exercised their right of rescission and thus the new financial transaction with American Residential became a nullity and they had no obligation under the note and mortgage they executed four days prior to the rescission. However, they also take the position that American Residential violated the Truth in Lending Act by distributing the funds to TCF before properly ascertaining that there had not been a rescission. The payment to TCF, according to the debtors, extinguished their financial obligation on the TCF note and therefore they have no further payment obligation to either TCF or to American Residential. Their authority for such a position, that they get both the

5

benefit of the rescission and the benefit of no further financial obligations on the original note, comes from their analysis of state law concerning the Uniform Commercial Code, the law of payment, and the law of contracts relating to assignments. However, they ignore what rescission really is. Rescission under TILA requires that the borrower be returned to the *status quo ante* the rescinded transaction. Thorp Loan & Thrift Co. v. Buckles (In re Buckles), 189 B.R. 752, 765 (Bankr. D. Minn. 1995). The bankruptcy judge determined, citing Williams v. Homestake Mortgage Co., 968 F.2d 1137, 1140 (11th Cir. 1992), that "[c]onsonant with the notion of rescission under general principles of equity, the statute requires the parties to be returned to the positions they held prior to entering the transaction, as much as possible." Appendix at 14.

The bankruptcy court focused on the substance of the transaction and the windfall that the debtors would realize if their mortgage was released. It focused on the business relationship created between American Residential and TCF at the time of the mortgage payoff, separate and apart from the relationship between American Residential and the debtors. To unwind the rescinded transaction, the mortgage-holders treated the American Residential/TCF transfer as American Residential's purchase of TCF's rights under the original mortgage. That purchase created a new creditor-debtor relationship between American Residential and the debtors. The bankruptcy court also ruled that TCF's release of the mortgage before TCF was aware of the rescission was a mistake. Following Minnesota's law of equity, the court set aside the release.

Although American Residential did not plead that it made a mistake in sending the money to TCF, the trial court found that the payment could be considered as a mistake in order to validate the assignment of the note and mortgage to American Residential and thus place the debtors in the position that they would have been in had the rescinded transaction never taken place. The trial judge's remedy of validating the note and the lien assigned to American Residential is consistent with equitable

6

principles. "The bankruptcy court is essentially a court of equity. Its equitable powers are to be exercised with respect to claims and substance will not give way to form and technical considerations will not prevent substantial justice from being done." Kenneally v. Standard Elec. Corp., 364 F.2d 642, 647 (8th Cir. 1966). "Equity regards the substance and intent rather than the form." Caplinger v. Patty, 398 F.2d 471, 476 (8th Cir. 1968).

The trial judge returned the borrower to the *status quo ante* despite the insistence of the debtors that American Residential had violated TILA by early disbursement and therefore American Residential should be penalized, with the penalty being the cancellation of the note and satisfaction of the mortgage. There is no such remedy identified in the Truth in Lending Act or Regulation Z or the staff notes upon which the debtors so strongly rely. And, as the trial court found, there was no violation of TILA by virtue of the disbursement of funds on the fourth day following the transaction.

Summary judgment is to be granted when the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005); Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004). That standard was properly applied in this case. The debtors raise numerous arguments on appeal about the effect of Minnesota property and mortgage law, Uniform Commercial Code law, and the equitable doctrine of unclean hands on the transaction between American Residential and TCF. However, these arguments miss the point that the transaction between American Residential and TCF did not change anything as far as the debtors were concerned, and the bankruptcy court's validation of the

7

assignment of TCF's rights to American Residential – which was American Residential's way of fixing its mistake – put the parties essentially into the positions they would have been in had there been no refinancing. Had American Residential delayed disbursement a few days beyond the minimum TILA waiting period and cancelled the refinancing transaction upon debtors' rescission, with no money having changed hands, the debtors would still be liable to TCF on the original mortgage. As it was, American Residential and TCF treated the premature transfer of funds as American Residential's purchase of the original mortgage. There is no indication that the terms were changed or that the debtors suffered in any manner as a result of the agreement between American Residential and TCF.

The bankruptcy court appropriately granted summary judgment to American Residential and denied summary judgment to the debtors in this situation.

## 2. Rule 9011 sanctions were not warranted

The trial court sanctioned Mr. Oliver, the attorney for the debtors, because it found that Mr. Oliver presented totally inconsistent arguments, even after having been warned by a letter from counsel for American Residential that a motion for sanctions would be filed if he did not relent. The inconsistent legal arguments, as found by the trial court, were (1) arguing that the initial transaction had been rescinded, and (2) arguing that the debtors had no obligation under the TCF note when held by TCF or by American Residential after the assignment.

On appeal, Mr. Oliver argues that sanctions are unwarranted because he was zealously and creatively representing his clients with what he believed to be a valid argument on an issue of first impression concerning American Residential's TILA duties and Minnesota law on payments.

8

The standard by which courts are to judge conduct challenged under Rule 11 [or Bankruptcy Rule 9011] is one of objective reasonableness. <u>Griffin v. Beaty (In re Griffin)</u>, 330 B.R. 737, 740 (W.D. Ark. 2005) (citing <u>Hartman v. Hallmark Cards, Inc.</u>, 833 F.2d 117, 124 (8th Cir. 1987)). "[T]o impose a Rule 9011 sanction the court must find that an attorney 'submitted a claim that has no chance of success under existing precedents and that fails to advance a reasonable argument to extend, modify, or reverse the law as it stands.'" <u>Halverson v. Funaro (In re Frank Funaro, Inc.)</u>, 263 B.R. 892, 900 (B.A.P. 8th Cir. 2001) (quoting <u>Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)</u>, 931 F.2d 222, 227 (2nd Cir. 1991)). Sanctions for litigation abuse are intended as a balance between responsible conduct by the litigants and "creative and ardent representation." <u>Id.</u> at 901 (quoting J. Scott Humphrey, <u>Sanctions Against the Creditor's Attorney in Non-reorganization Bankruptcy Proceedings</u>, 6 Bankr. Dev. J. 481, 482 (1989)).

Although Mr. Oliver advanced arguments that were ostensibly inconsistent and tantamount to a request that the debtors be allowed to "have their cake and eat it too" – *i.e.*, to rescind the refinancing of their mortgage <u>and</u> have it deemed satisfied at the same time – Mr. Oliver's position was not wholly without legal support.

Mr. Oliver relied on and presented both to counsel for American Residential and the court Minnesota state law concerning Uniform Commercial Code payment provisions, the law of payments with regard to real estate mortgages, and the law of contracts with regard to assignments. <u>See, e.g.</u>, <u>Wayzata Enter., Inc. v. Herman</u>, 128 N.W.2d 156, 158 (Minn. 1964) (a check is a conditional payment, but upon payment of the check, the debt is deemed to have been discharged when the check was given); <u>Northern Drug Co. v. Abbett</u>, 284 N.W. 881, 883-84 (Minn. 1939) (when debt is extinguished by act of the parties as by payment, accord and satisfaction, or voluntary release, it ceases to have existence for any purpose); <u>First Nat'l Bank of Benton v. Gallagher</u>, 138 N.W.2d 681, 682 (Minn. 1912) (payment of a promissory note secured by a mortgage extinguishes the lien of the mortgage); <u>McFadden v. Follrath</u>, 130 N.W.

542, 545 (Minn. 1911) ("While a check of the debtor does not, until paid, ordinarily amount to payment of the debt, it does, after payment of the check, extinguish the debtor's liability, if the same is paid to the creditor, or to the agent of the creditor authorized to receive the check of the debtor . . . ."). On behalf of his clients Mr. Oliver took the position that their arrangement with American Residential had been rescinded under TILA and that TILA deals only with the effects of rescission as between the borrower and the lender and not the effect on third parties to the transaction. With regard to the continuing viability of the TCF note and mortgage, his position was that the court should have looked to the Minnesota law of payments as shown by older case law and now codified in the Uniform Commercial Code, which, arguably, supports his position.

Here, American Residential delivered funds to TCF. TCF considered the note paid in full. TCF notified the debtors that the note was paid in full and notified the debtors that TCF had executed a release of the mortgage and had provided it to the agent for American Residential. TCF refused further payments from the debtors. There is no question that TCF considered the transaction complete. Several months after the transaction was complete, American Residential and TCF worked out an arrangement whereby the payment as between American Residential and TCF would be considered a purchase of the note and assignment of the note and mortgage, rather than a payoff. That transaction, at least in form, did not resurrect the note nor cancel the satisfaction of the mortgage. Those actions did not occur until the trial judge, exercising his equitable powers, determined that the only way to put the debtors back in their original position was to resurrect the note and acknowledge that the arrangement between TCF and American Residential was beneficial to both of them and not detrimental to the debtors.

Thus, the apparent contradiction in the debtors' position advanced by Mr. Oliver was not wholly unfounded in law or fact, nor was it patently frivolous; rather, it resulted from the improper elevation of form over substance and a blind application

10

of Minnesota law without considering equitable principles. Advancing different legal theories that might result in an inequitable result should not subject an attorney to sanctions when one of those arguments fails to carry the day. An attorney's ethical obligation is to represent his or her clients vigorously and zealously, which Mr. Oliver did in this case. On the rescission issue under TILA the debtors prevailed. On the state law issue of setting aside the 2002 TCF mortgage, the debtors did not prevail, and rightly so, as such a result would have been inequitable. However, Mr. Oliver might well have been faulted for the adequacy of his representation of the debtors had he not raised and presented these arguments, which were based on well-established Minnesota law.

Moreover, the trial court did not indicate that Mr. Oliver's pursuit of the conflicting legal theories resulted in any greater costs of discovery or trial preparation for American Residential. Imposing a sanction of $15,000 without any finding that Mr. Oliver's legal position caused the opposing party to actually incur such costs is a clear abuse of discretion.

CONCLUSION

The grant of summary judgment on American Residential's complaint for a determination of the validity of its lien is affirmed. Applying the abuse of discretion standard of review, the finding of a violation of Rule 9011 is reversed and the monetary sanction imposed by judgment against Mr. Oliver is vacated.

SCHERMER, Bankruptcy Judge, dissenting in part.

I respectfully disagree with the majority's conclusion that Rule 9011 sanctions were not warranted. Deference should be given to a trial judge who imposes sanctions; reversal is only warranted where the sanctions resulted from a clear abuse of discretion. Cooter & Gell v. Hartmarx, 496 U.S. at 405. I do not believe the trial

11

judge clearly abused his discretion. The arguments presented by the debtor's counsel were entirely inconsistent. If the debtors rescinded the refinancing transaction under TILA they must remain liable under the first mortgage because rescission requires the parties to be returned to the *status quo ante*. The cases cited by the majority in support of their conclusion that Mr. Oliver's position "was not wholly without legal support" have nothing to do with rescission under TILA. Rather, the cases discuss general principles regarding payments and assignments, many of which have since been codified, for example, in the Uniform Commercial Code, and all pre-date TILA's enactment in 1968. Arguing "apples" in support of "oranges" does not provide legal support for an argument pursuant to which the debtors are seeking to "have their cake and eat it too." I therefore respectfully dissent with respect to that portion of the opinion reversing the imposition of sanctions and would instead conclude that the trial court did not abuse its discretion in awarding sanctions.

———————————